## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CURTIS E. MOZIE                          )
200 P Street NW #23                      )
Washington, DC 20001                     )
                                         )
     Plaintiff,                        )
                                         )
v.                                       )     Civil Action No._____
                                         )
WASHINGTON METROPOLITAN AREA )
     TRANSIT AUTHORITY               )
600 Fifth Street NW                      )
Washington, DC 20001                     )
                                         )
Serve:                                   )
     Patrica Lee, Esquire             )
     General Counsel's Office          )
     600 Fifth Street NW              )
     Washington, DC 20001             )
                                         )
     Defendant.                        )
_____

### COMPLAINT

     COMES NOW Plaintiff, Curtis Mozie, and respectfully moves for judgment against

Defendant, Washington Metropolitan Area Transit Authority ("WMATA"), on grounds and in

the amount set forth below:

### JURISDICTION AND VENUE

     1.     Jurisdiction in this Court is founded on the Washington Metropolitan Area Transit

Regional Compact, which establishes original jurisdiction in this Court over WMATA matters

pursuant to WMATRC Article XVI § 81, codified in District of Columbia law as D.C. Code

Ann. § 9-1107.10.

     2.     Venue in this Court is proper as the negligent acts and/or omissions committed by

Defendant occurred in the District of Columbia, and the injuries of the Plaintiff occurred in the

District of Columbia.

## PARTIES

3.      Plaintiff Curtis Mozie (hereinafter referred to as "Plaintiff") is an individual citizen of the District of Columbia, residing at the address 200 P Street NW #23, Washington, DC 20001.

4.      At all times relevant herein, Defendant WMATA was the owner of the Metro subway system being operated by its employees, who were acting with the course and scope of their employment and/or agency with WMATA.

5.      Defendant Washington Metropolitan Area Transit Authority ("WMATA") was created when the United States Congress approved the Washington Metropolitan Area Transit Authority Compact ("WMATA Compact"), D.C. Code §§ 9-1107.01, *et seq.*, which was signed by the District of Columba, Maryland and Virginia.

6.      By the terms of the WMATA Compact that created it, WMATA is liable for its negligent acts and/or omissions and those of its Directors, officers, employees, and agents committed in the conduct of any proprietary function. D.C. Code § 9-1107.01(80).

7.      The provision of mass transportation is a proprietary function within the meaning of the WMATA Compact.

## FACTS

6.      On the afternoon of January 12, 2015, Mr. Mozie was a passenger awaiting on the platform for a train at the L'Enfant Plaza Metro Station.

7.      On that same afternoon, WMATA Train 302 was traveling on the Yellow Line towards Huntington, Virginia.

8.      At approximately 3:15 p.m., several hundred feet after having left the L'Enfant

Plaza station, Train 302 encountered dense smoke in the tunnel and came to an abrupt halt.

9.      Upon information and belief, a circuit breaker had tripped on the third rail (the conductor running alongside the train tracks that supplies high-voltage electric power to Metro trains) of that section of track approximately ten minutes beforehand, but it went uninvestigated by WMATA.

10.      Train 302 became disabled in the tunnel, without power, and was illuminated by emergency lighting only.

11.      Passengers on Train 302 were instructed to remain clam, to stay on the train and to keep the doors closed. Passengers were further told that they would be returning to the L'Enfant Plaza station in short order. These instructions were repeated during the passengers' ordeal.

12.      Meanwhile, Mr. Mozie and other passengers awaiting trains on the platforms of L'Enfant Plaza were not informed of the developing dangerous situation.

13.      At approximately 3:16 p.m., WMATA Operations Control Center attempted to activate ventilation fans to evacuate the smoke from the relevant section of the tunnel. Upon information and belief, the fans failed to achieve their objective due to a failure to activate, their activation in the wrong direction, and/or some other cause.

14.      According to the National Transportation Safety Board's Preliminary Report on the incident, the smoke in the tunnel was caused by "severe electrical arcing" from the third rail approximately 1,100 feet ahead of where Train 302 stopped.

15.      At approximately, 3:18 p.m., The District of Columbia Office of Unified Communications ("OUC") received a 911 call from a construction worker, who reported smoke emanating form a Metro ventilation shaft located at 9th Street and Maine Avenue SW, roughly a

half-mile south of the train's location.

16.     At approximately 3:22 p.m., OUC received a 911 call from WMATA Supervisor of Metro Rail Unit 22 reporting heavy smoke in the L'Enfant Plaza station.

17.     Mr. Mozie and other passengers waiting on the platform noticed smoke but were not told to evacuate the platform and/or the station. The amount of smoke grew causing passengers to flee the platform looking for safety.

18.     At approximately 3:27 p.m., OUC received a 911 call from Mr. Mozie reporting the smoke, his inhalation thereof and resulting medical distress. Mr. Mozie notified OUC of his location and his clothing so that he could receive emergency assistance.

19.     At approximately 3:28 p.m., OUC dispatches a "Metro Station Box Alarm," which, in compliance with District of Columbia Fire and Emergency Medical Services Department ("FEMS") protocol, includes multiple units.

20.     At approximately 3:31 p.m., the first FEMS responders arrived on-scene at the L'Enfant Plaza station. From the beginning, their efforts were hampered by the fact that WMATA had not updated its signal-boosting and signal-relaying equipment to ensure compatibility with new FEMS standards. Upon information and belief, FEMS had notified WMATA of this problem in the L'Enfant Plaza station at least as early as January 8, 2015.

### COUNT 1 - NEGLIGENCE

21.     Plaintiff incorporates, by reference, paragraphs 1 through 20, above.

22.     Plaintiff further alleges that all times relevant herein, WMATA's trains, railroad operations, tunnels, tracks, and adjoining tracks (the "subway property") were owned, controlled, operated, managed, constructed, maintained, repaired, designed, evaluated, built, overseen, patrolled, and supervised by WMATA.

23.     Plaintiff further alleges that on January 12, 2015 and prior thereto, Defendant WMATA was responsible for maintaining and ensuring the safe use and proper condition of the railroad operations and property, including locomotives, trains, signs, signals, switches, safety devices, communication devices, and other equipment at and along the subway property, and for properly and safely managing, overseeing, and coordinating the travel of railroad trains upon and along said property.

24.     At all times mentioned herein, Defendant WMATA, as a common carrier, owed a duty of reasonable care to its passengers on the Train and waiting on the platform.

25.     Plaintiff further alleges that Defendant WMATA breached this duty in some or all of the following ways:

       a.     By failing to properly inspect and maintain the third rail running through the relevant section of tunnel;

       b.     By failing to properly inspect and maintain the ventilation system for the relevant section of tunnel;

       c.     By failing to properly train its agents, servants, and/or employees in the proper activation and use of the ventilation system in the event of a fire or smoke emergency;

       d.     By failing to calibrate its radio equipment to be compatible with that of FEMS despite having clear notice of its non-compliance;

       e.     By failing to adequately investigate the third-rail circuit breaker that tripped at 3:06 p.m. on January 12;

       f.     By failing to in a timely manner shut of electricity to the third rail in the relevant section of tunnel;

g.     By failing to in a timely manner inform FEMS that electricity had been shut off to the third rail in the relevant section of tunnel;

h.     By failing to adequately warn passengers waiting on the platform at L'Enfant Plaza of the increasingly dangerous situation and ordering them to safely evacuate the station; and/or

i.     By otherwise negligently, carelessly, and wrongfully failing to take reasonable precautions to protect its passengers from injury and death.

26.     As a direct and proximate result of Defendant WMATA's negligence, Mr. Mozie was exposed to an underground platform rapidly filling with toxic smoke.

27.     As a direct and proximate result of Defendant WMATA's negligence, Mr. Mozie feared for his life and the lives of others, sustained significant pulmonary injuries, breathed in harmful smoke, and experienced and continues to experience extreme helplessness, fright, anxiety, and anguish, both physically and emotionally.

28.     AS a further direct and proximate result of Defendant WMATA's negligence, Mr. Mozie has suffered, and will continue to suffer, severe injuries, and extreme physical and emotional damages; has incurred, and will continue to incur, substantial medical expenses; and has incurred, and will continue to incur, lost wages.

WHEREFORE, Plaintiff, Curtis Mozie, demands judgment against Defendant in the full and just amount of Five Hundred Thousand Dollars ($500,000.00), plus interest and costs.

Respectfully submitted,

**/s/ Jason W. Fernandez**
Jason W. Fernandez, #977919
GREENBERG & BEDERMAN LLC
Attorneys for Plaintiff
1111 Bonifant St.
Silver Spring, MD 20910
t: (301) 589-2200
f: (301) 589-6706
jfernandez@gblawyers.com

## JURY DEMAND

Plaintiff hereby demands a jury trial with respect to each claim in this Complaint.

Respectfully submitted,

**/s/ Jason W. Fernandez**
Jason W. Fernandez, #977919